# EXHIBIT D

**WEISBERG LAW**
Matthew B. Weisberg
Attorney Id. No.: 85570
L. Anthony DiJiacomo, III
Attorney Id. No.: 321356
7 South Morton Ave.
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
*Attorneys for Plaintiff*

Filed and Attested by the
Office of Judicial Records
26 OCT 2026 06:33 pm
S. GILLIAM

| | |
|---|---|
| **BEST BEV, LLC**<br>c/o Weisberg Law<br>7 South Morton Ave<br>Morton, PA 19070<br><br>Plaintiff,<br><br>v.<br><br>**JOHN V. KELLY, III, ESQ.**<br>d/b/a Norris McLaughlin<br>515 W. Hamilton Street, Suite 502<br>Allentown, PA 18101<br><br>And<br><br>**NORRIS MCLAUGHLIN, P.C.**<br>d/b/a Norris McLaughlin<br>515 W. Hamilton Street, Suite 502<br>Allentown, PA 18101<br><br>Defendants. | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br>MAJOR JURY<br><br>No.: 251103259<br><br>JURY TRIAL OF TWELVE JURORS DEMANDED. |

**NOTICE TO DEFEND**

| NOTICE | AVISO |
| --- | --- |
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas ex-puestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.<br><br>IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. | USTED LE DEBE TOMAR ESTE PAPEL A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE A UN ABOGADO, VA A O TELEFONEA LA OFICINA EXPUSO ABAJO. ESTA OFICINA LO PUEDE PROPORCIONAR CON INFORMATION ACERCA DE EMPLEAR A UN ABOGADO.<br>SI USTED NO PUEDE PROPORCIONAR PARA EMPLEAR UN ABOGADO, ESTA OFICINA PUEDE SER CAPAZ DE PROPORCIONARLO CON INFORMACION ACERCA DE LAS AGENCIAS QUE PUEDEN OFRECER LOS SERVICIOS LEGALES A PERSONAS ELEGIBLES EN UN HONORARIO REDUCIDO NI NINGUN HONORARIO. |

Philadelphia Bar Association – Referral Service
1101 Market St #11, Philadelphia, PA 19107
(215) 238-6300

**WEISBERG LAW**
Matthew B. Weisberg
Attorney Id. No.: 85570
L. Anthony DiJiacomo, III
Attorney Id. No.: 321356
7 South Morton Ave.
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
*Attorneys for Plaintiff*

| | | |
|---|---|---|
| **BEST BEV, LLC**<br>c/o Weisberg Law<br>7 South Morton Ave<br>Morton, PA 19070<br><br>Plaintiff,<br><br>v.<br><br>**JOHN V. KELLY, III, ESQ.**<br>d/b/a Norris McLaughlin<br>515 W. Hamilton Street, Suite 502<br>Allentown, PA 18101<br><br>And<br><br>**NORRIS MCLAUGHLIN, P.C.**<br>d/b/a Norris McLaughlin<br>515 W. Hamilton Street, Suite 502<br>Allentown, PA 18101<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br>MAJOR JURY<br><br><br><br><br>No.: 251103259<br><br>JURY TRIAL OF TWELVE JURORS<br>DEMANDED. |

## AMENDED CIVIL ACTION COMPLAINT

### I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Best Bev, LLC ("Best Bev" or "Plaintiff"), is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, which



Case ID: 251103259

at all times material hereto owned and operated a beverage manufacturing and co-packing facility located at 685 Broad Street, Waverly, New York 14892, with an agent able to accept service for purposes of this litigation only at the above-captioned address.

2. Defendant, John V. Kelly, III, Esquire ("Attorney Kelly"), is an adult individual and an attorney at law who, at all times material hereto, was a partner, shareholder, member, associate, employee, servant, and/or agent of Defendant Norris McLaughlin, and who rendered the legal services at issue in this action to Plaintiff, with an office at the above-captioned address.

3. Defendant, Norris McLaughlin, P.C., also identified of record as Norris McLaughlin, P.A., and doing business as Norris McLaughlin ("Norris McLaughlin" and, together with Attorney Kelly, "Defendants"), is a professional corporation and/or professional association engaged in the practice of law, maintaining offices in Bridgewater, New Jersey; New York, New York; and Allentown, Pennsylvania, including at the above-captioned address.

4. At all times material hereto, Attorney Kelly and Patrick T. Collins, Esquire — another attorney employed by Norris McLaughlin whose work product is described herein — acted within the course and scope of their employment by, and/or agency for, Norris McLaughlin and in furtherance of Norris McLaughlin's business, such that Norris McLaughlin is vicariously liable for each of their acts and omissions described herein.

5. Plaintiff asserts claims sounding in professional negligence, breach of contract, breach of fiduciary duty, negligent misrepresentation, and vicarious liability against Defendants.

6. Jurisdiction is proper in this Court because the amount in controversy exceeds the jurisdictional limits requiring arbitration referral, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to Pa.R.C.P. 1006 and 2179 because, upon information and belief, Norris McLaughlin regularly conducts business within the County of

Philadelphia, including by holding itself out as available to render, and by in fact rendering, legal services to clients located within the County of Philadelphia, and because Attorney Kelly regularly conducts business within the County of Philadelphia.

8. No prior action between these parties arising out of the facts pleaded herein has been commenced in any other court of competent jurisdiction.

## II. OPERATIVE FACTS

9. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

### A. BEST BEV AND ITS NEW YORK MANUFACTURING WORKFORCE

10. Best Bev is a beverage manufacturer and co-packer that cans sodas, alcoholic beverages, and other beverage products.

11. At all times material hereto, Best Bev operated a manufacturing facility located at 685 Broad Street, Waverly, New York (the "Waverly Facility").

12. As of August 2024, Best Bev employed approximately two hundred (200) individuals, the vast majority of whom worked at the Waverly Facility.

13. The Waverly Facility workforce consisted predominantly of processing technicians, canning-line operators, packers, janitorial staff, and warehouse personnel, whose duties consisted principally of physical labor, including mixing and canning beverages; lifting, packing, and organizing merchandise; cleaning cans; and cleaning the facility.

14. In addition to its New York workforce, Best Bev and its affiliated entities employed individuals in the Commonwealth of Pennsylvania and, through remote work arrangements, in other states.

### B. NORRIS MCLAUGHLIN AUTHORS THE SOURCE TEMPLATE AND INSTRUCTS THAT STATE PAY-FREQUENCY LAW BE VERIFIED



Case ID: 251103259

15. In or around December 2021, Norris McLaughlin, through Patrick T. Collins, Esquire, prepared an employee handbook template for a Pennsylvania entity affiliated with Plaintiff.

16. On December 21, 2021, Attorney Collins transmitted that template by electronic mail, stating: "The attached template is for your review," and attaching a document entitled "2021 Template Employee Handbook.docx" (the "Norris Template").

17. The Norris Template was the work product of Norris McLaughlin.

18. The Norris Template contained no fewer than sixteen (16) bracketed drafting notes, each directing the drafter to verify the requirements of applicable state and local law before adopting the corresponding provision.

19. One of those bracketed drafting notes appeared within the Norris Template's section entitled "Paychecks," and provided, in full capital letters: "[NOTE: CHECK STATE LAW FOR ANY REQUIREMENTS RELATED TO FREQUENCY OF PAY AND WHETHER EMPLOYERS MAY REQUIRE EMPLOYEES TO BE PAID BY DIRECT DEPOSIT.]"

20. Immediately beneath that drafting note, the Norris Template provided: "[COMPANY NAME]'s pay period for all employees is biweekly on Friday."

21. By that drafting note, Norris McLaughlin acknowledged in its own work product that the frequency at which employees must be paid is governed by state law, that such law varies from jurisdiction to jurisdiction, and that the biweekly pay provision could not properly be adopted for any given jurisdiction until the law of that jurisdiction had been checked.

22. The drafting note accordingly reflects Norris McLaughlin's own articulation of the standard of care applicable to an attorney conforming the Norris Template to the law of a particular state.



Case ID: 251103259

23. The biweekly pay provision that gives rise to this action originated in the Norris Template.

### C. THE NOVEMBER 30, 2022 ENGAGEMENT TO CONFORM THE HANDBOOK TO NEW YORK LAW

24. On or about November 21, 2022, Plaintiff's then-General Counsel, Carey Drangula, Esquire, wrote to Theodore J. Zeller, III, Esquire, of Norris McLaughlin, requesting New York employment counsel and stating: "An additional project - employee handbook for the Waverly operation. Perhaps our PA version can be revised to comport with NY law."

25. On November 30, 2022, at 11:02 a.m., Attorney Drangula transmitted Plaintiff's draft handbook to Attorney Kelly under the subject line "Best Bev, LLC - DRAFT Employee Handbook (NY)," attaching a document entitled "DRAFT Employee Handbook - Best Bev, LLC.docx" (the "November 2022 Draft"). A true and correct copy of that electronic mail is attached hereto as Exhibit 1, and a true and correct copy of the November 2022 Draft is attached hereto as Exhibit 1A.

26. That transmittal, which constituted the engagement at issue, stated in pertinent part: "Attached is a draft employee handbook for Best Bev, LLC, the entity that will be operating at the Waverly, NY location. … Can you please review the draft, update the PA law sections with the NY counterparts, and let me know whether there are any problematic issues from a NY employment law perspective?" (*See* Ex. 1.)

27. The scope of the engagement Defendants thereby accepted was therefore threefold: (a) to review the November 2022 Draft; (b) to replace any Pennsylvania-law provisions with their New York counterparts; and (c) to identify any problematic issues arising under New York employment law.



Case ID: 251103259

28. Attorney Kelly accepted that engagement the same day, copying Attorney Collins, and responding: "I will review and let you know if I have any questions."

29. The November 2022 Draft transmitted to Attorney Kelly contained the following provision within its section entitled "Paychecks": "Best Bev's pay period for all employees is biweekly on Friday, subject to change at the Company's sole discretion." (*See* Ex. 1A.)

30. Defendants knew, or in the exercise of reasonable care should have known, that the handbook they were engaged to convert was intended for, and would be applied to, the workforce at Plaintiff's Waverly Facility in the State of New York.

31. Defendants knew, or in the exercise of reasonable care should have known, that Plaintiff was relying upon them to ascertain and apply the requirements of New York law to the policies set forth in the handbook, including the policy governing the payment of wages.

32. Upon information and belief, Defendants did not issue any written engagement letter defining or limiting the scope of the handbook engagement, and no such engagement letter appears in Plaintiff's file.

### D. ATTORNEY KELLY ARTICULATES THE VERY DUTY HE THEREAFTER FAILED TO DISCHARGE

33. On December 13, 2022, while the handbook engagement was pending, Attorney Kelly wrote to Attorney Drangula, copying Attorney Collins, and stated the governing principle in unequivocal terms: "You are required to comply with the law of every state in which you have employees." A true and correct copy of that electronic mail is attached hereto as Exhibit 2.

34. In that same communication, Attorney Kelly expressly confirmed that he was then at work on the handbook, writing: "I assume the handbook that I am working on is for the same companies? I included a state specific law disclaimer in there that states that you employ employees in multiple states and if the state you work in provides more rights than outlined in



Case ID: 251103259

the handbook, your state's law controls and you get those rights. I also began a NY addendum because NY requires certain language included in handbooks. Are there any other states that I should be looking at while updating the handbook?" (*See* Ex. 2.)

35. Attorney Kelly thus understood, and expressly represented to Plaintiff that he understood, that his task included identifying the mandatory requirements that New York law imposed upon Plaintiff with respect to its New York workforce, and incorporating those requirements into the handbook.

### E. DECEMBER 16, 2022: DEFENDANTS DELIVER THE NEW YORK CONVERSION AND DRAFT WITHIN THE SAME STATUTORY ARTICLE

36. On December 16, 2022, Attorney Kelly delivered his redline of the handbook under the subject line "Redline Best Bev Handbook," writing: "Attached is a redline first draft. It has the NY additions. It still needs the table of contents updated. Take a look and we can discuss if you have any questions or comments." (the "Kelly Redline"). A true and correct copy of that electronic mail is attached hereto as Exhibit 3, and a true and correct copy of the Kelly Redline is attached hereto as Exhibit 3A.

37. The Kelly Redline is the work product of Defendants. Upon information and belief, the native electronic file as transmitted bears document metadata identifying "John V. Kelly, Esq." as the person who last modified the document, on December 16, 2022. (*See* Ex. 3A.)

38. The Kelly Redline added more than forty (40) New York-specific provisions to the handbook, including, among others, sections addressing New York Paid Family Leave; New York safe and sick leave; lactation break and leave rights; pregnancy-related leave and accommodation; domestic violence victim accommodation; bone marrow and blood donation leave; inquiries concerning arrest records and criminal convictions; New York's model anti-



Case ID: 251103259

sexual harassment policy; and the remedies available before the New York State Division of Human Rights. (*See* Ex. 3A.)

39. Notwithstanding the breadth of that conversion, the Kelly Redline left the biweekly pay provision entirely untouched, retaining verbatim and without annotation: "Best Bev's pay period for all employees is biweekly on Friday, subject to change at the Company's sole discretion." (*Compare* Ex. 3A *with* Ex. 1A.)

40. Moreover, in the paragraph *immediately following* that provision, Attorney Kelly inserted an entirely new section entitled "Wage Theft Prevention Act," which recited that "[a]t the time of hire, the Company provides written notice to all New York Employees," and which enumerated the required contents of that notice, including "Employee's regular designated payday." (*See* Ex. 3A.)

41. The "Wage Theft Prevention Act" section Attorney Kelly drafted addresses the wage-notice requirement imposed by Section 195(1) of the New York Labor Law. (*See* Ex. 3A.)

42. Section 195 and Section 191 of the New York Labor Law both appear within Article 6 of that statute, which governs the payment of wages.

43. Attorney Kelly was therefore researching and drafting within Article 6 of the New York Labor Law, in the very paragraph that follows the pay-frequency provision, and expressly addressed the employee's "regular designated payday" — yet failed to identify the mandatory pay-frequency requirement imposed by Section 191(1)(a) of the same Article upon manual workers.

### F. JANUARY 2023: DEFENDANTS AFFIRMATIVELY REPRESENT THAT THE HANDBOOK COMPLIES WITH NEW YORK LAW

44. On January 10, 2023, Attorney Kelly wrote to Attorney Drangula, copying Attorney Collins, and represented: "I just want to confirm your intent. I drafted the employment handbook



Case ID: 251103259

for your NY entity with NY law in mind. NY is much more restrictive than PA such that if you were to comply with NY law you would be in compliance with PA law." A true and correct copy of that electronic mail is attached hereto as Exhibit 4.

45. That representation was false. The handbook Defendants drafted did not comply with New York law, because its pay provision directed the biweekly payment of "all employees," including the several hundred manual workers at the Waverly Facility, in direct contravention of Section 191(1)(a) of the New York Labor Law.

46. On January 25, 2023, Attorney Kelly delivered the completed New York conversion under the subject line "Best Bev Handbook Update," writing: "I took references to PA law out. There are/will need to be several changes to be made to comply with NY Law. … However, New York provides extra protections for workers and imposes additional and heightened requirements on employers." A true and correct copy of that electronic mail is attached hereto as Exhibit 5.

47. In that same communication, Attorney Kelly identified, as his examples of New York's "extra protections" and "additional and heightened requirements," the model sexual harassment policy that must be included in New York employment manuals and certain differences in leave law. (*See* Ex. 5.)

48. Attorney Kelly did not identify Section 191(1)(a) of the New York Labor Law — the single New York wage requirement of greatest consequence to a manufacturing employer whose handbook designated a biweekly payday for all employees. (*See* Ex. 5.)

49. Attorney Drangula thereafter forwarded Defendants' work product to Plaintiff's Director of Human Resources for implementation.

### G. DEFENDANTS CONTINUE TO ADVISE ON THE SAME HANDBOOK AS NEW YORK LAW EVOLVED



Case ID: 251103259

50. On April 19, 2023, Attorney Drangula asked Attorney Kelly to review the handbook's "Drug-Free and Alcohol-Free Workplace" language and advise "whether revisions are required given the ever-evolving cannabis/workplace laws in NY."

51. Attorney Kelly responded the same day that he would "take a look," and thereafter delivered revised handbook language together with an analysis of New York's Marihuana Regulation and Taxation Act and the New York Department of Labor's published cannabis guidance.

52. The parties' course of dealing was therefore that the handbook was a living compliance document that Defendants reviewed, revised, and updated on request as New York law developed.

53. Defendants continued to render New York employment law advice to Plaintiff thereafter and into 2024.

54. At no point during that continuing engagement did Defendants identify the pay-frequency defect in the handbook they had drafted.

### H. The New York Statute Defendants Failed to Identify

55. Section 191(1)(a) of the New York Labor Law provides, in pertinent part, that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." *See* N.Y. Lab. Law § 191(1)(a) (McKinney).

56. Section 190(4) of the New York Labor Law defines "manual worker" to mean "a mechanic, workingman or laborer," and the New York Department of Labor has long construed that term to encompass employees who spend more than twenty-five percent (25%) of their working time performing physical labor.



Case ID: 251103259

57. The weekly-pay requirement is longstanding and is the subject of published New York Department of Labor guidance captioned "Frequency of Pay."

58. Since *Vega v. CM & Associates Construction Management, LLC*, 175 A.D.3d 1144 (1st Dep't 2019), the frequency-of-pay requirement has been the recognized basis for private damages actions, including claims for liquidated damages — a development firmly established more than three years before Defendants performed the New York conversion.

59. Plaintiff's Waverly Facility workforce consisted largely of "manual workers" within the meaning of Section 190(4) of the New York Labor Law.

60. No version of the handbook Defendants drafted, reviewed, or revised ever used the term "manual worker," and no version ever provided for the weekly payment of any employee.

### I. THE DEFECTIVE PROVISION PERSISTS THROUGH EVERY VERSION OF THE HANDBOOK

61. Plaintiff adopted the handbook Defendants drafted in or around October 2023. As adopted, it provided: "Best Bev's pay day for all employees is biweekly on Thursday, subject to change at the Company's sole discretion. . . . The pay period starts on a Sunday and runs through Saturday each week." A true and correct copy of the adopted handbook is attached hereto as Exhibit 6.

62. Materially identical language appears in every subsequent version of the handbook in Plaintiff's possession, including the revisions dated February 14, 2024; April 5, 2024; June 12, 2024; June 13, 2024; and June 19, 2024. True and correct copies of those revisions are attached hereto as Exhibits 7A, 7B, 7C, 7D, and 7E, respectively.

63. Plaintiff, relying upon Defendants' advice and in conformity with the handbook Defendants drafted, in fact paid its Waverly Facility workforce — including its manual workers — on a biweekly basis.



Case ID: 251103259

64. The first version of the handbook omitting the biweekly frequency sentence is the revision dated July 29, 2024, the electronic file for which was created on August 7, 2024 — that is, after Plaintiff received the demand letter described below. A true and correct copy of that revision is attached hereto as Exhibit 10.

65. Even then, the revision merely deleted the frequency sentence and retitled the section "Paydays." No version of the handbook has ever provided for the weekly payment of manual workers as Section 191(1)(a) requires. (*See* Ex. 10.)

### J. July 31, 2024: The Error Surfaces

66. On July 31, 2024, the firm of Borrelli & Associates, P.L.L.C., through Lauren R. Reznick, Esquire, served upon Plaintiff a demand letter and notice of intent to sue on behalf of Jamie Richtmyer, a former janitor at the Waverly Facility. A true and correct copy of the demand letter, together with its attachments, is attached hereto as Exhibit 8.

67. The Richtmyer demand asserted that "in blatant violation of Section 191(1)(a) of the NYLL, the Compan[y] has paid Ms. Richtmyer and other manual workers, including janitors and factory production workers, on a bi-weekly rather than a weekly basis throughout their employment," and demanded liquidated damages equal to one hundred percent (100%) of each late payment, plus interest and attorneys' fees, on behalf of Richtmyer and all others similarly situated. (*See* Ex. 8.)

68. On the same date, Richtmyer's counsel served a Notice of Claim pursuant to Section 630 of the New York Business Corporation Law, demanding to inspect Plaintiff's records in order to identify, and to enforce the personal liability of, Plaintiff's ten largest shareholders for the unpaid wages claimed. A true and correct copy of that Notice of Claim is attached hereto as Exhibit 11.

### K. August 2, 2024: Defendants Are Confronted With the "Significant Miss" and Continue to Represent Plaintiff.



Case ID: 251103259

69. On August 1, 2024, Attorney Drangula forwarded the Richtmyer demand to Attorney Kelly, copying Attorney Zeller, describing the claim as "violation of NY Labor Law for payment of a 'manual worker' biweekly instead of weekly," and requesting that Defendants review the letter and schedule a call. A true and correct copy of the resulting electronic mail thread is attached hereto as Exhibit 9.

70. On the morning of August 2, 2024, Attorney Kelly responded: "I'll review. Should we set up a call for next week sometime? I'm available Monday and Tuesday afternoon?" (*See* Ex. 9.)

71. Later that same day, Attorney Drangula wrote to Attorney Kelly, copying Attorney Zeller, stating: "We need to reach out to opposing counsel immediately for a few reasons: [t]he 'manual worker' issue was a significant miss that is associated with potentially massive fines under NYLL (please see NYDOL's 'Frequency of Pay' and Best Bev's Draft Employee Handbook, p. 26, 'Paychecks,' first sentence (we have since updated the handbook, however, that sentence remains). Presently, Best Bev has roughly 200 employees, the vast majority of whom may fall within the definition of 'manual worker.'" (*See* Ex. 9.)

72. It turns out that the "significant miss" to which Attorney Drangula referred was Defendants' own. The handbook provision identified by page and sentence was the provision Defendants had drafted, reviewed, converted to New York law, and repeatedly revised without correction.

73. In the same thread, Defendants undertook to respond to the Richtmyer claim on Plaintiff's behalf, including by scheduling a strategy call, reviewing the draft tolling agreement proposed by Richtmyer's counsel, and preparing outreach to opposing counsel. Defendants therefore continued to represent Plaintiff with respect to the very statutory subject matter of their earlier advice through at least August 2, 2024. (*See* Ex. 9.)



Case ID: 251103259

74. At no time did Defendants disclose to Plaintiff that the "significant miss" was the product of their own advice and work product; advise Plaintiff that it may possess a claim against Defendants arising from that advice; advise Plaintiff to consult independent counsel concerning that conflict; or obtain Plaintiff's informed consent to Defendants' continued representation notwithstanding that conflict.

### L. Plaintiff Retains Successor Counsel, Which Places Defendants on Notice

75. On August 7, 2024, Plaintiff retained Windels Marx Lane & Mittendorf, LLP ("Windels Marx") to defend the Richtmyer matter and to render related employment advice.

76. In or about August 2024, Plaintiff entered into a tolling agreement with Richtmyer in an effort to resolve her claims without litigation.

77. On September 10, 2024, Rodman E. Honecker, Esquire, of Windels Marx wrote directly to Attorney Kelly, stating: "Part of Ms. Richtmyer's claim relates to alleged untimely payment of wages to manual workers in alleged violation of §191(1)(a) of the New York Labor Law. Best Bev previously retained you and your firm, in part, to advise Best Bev on New York law regarding payment of wages. Accordingly, please place your malpractice insurance carrier on notice of this claim. All rights are reserved." A true and correct copy of that letter is attached hereto as Exhibit 12.

78. On August 26, 2024, Union Insurance Company and Acadia Insurance Company disclaimed coverage for the Richtmyer claims and the Business Corporation Law § 630 Notice of Claim, advising Plaintiff that "we have determined that there is no coverage for the claims asserted in the Demand Letter or Notice of Claim" and that "we will not be retaining counsel to defend Best Bev, LLC."



Case ID: 251103259

79. As a consequence of that disclaimer, Plaintiff was required to bear the cost of the Windels Marx defense itself.

### M. The Johnson Class Action

80. On October 15, 2024, Shakie Johnson, a processing technician employed at the Waverly Facility, commenced a putative class action against Plaintiff in the United States District Court for the Northern District of New York, captioned *Johnson v. Best Bev LLC*, No. 3:24-cv-1260 (AJB/ML) (the "Johnson Action"). A true and correct copy of the Johnson complaint is attached hereto as Exhibit 13.

81. The Johnson Action asserted three causes of action under the New York Labor Law: (a) untimely payment of wages to manual workers in violation of Section 191; (b) failure to furnish accurate wage statements in violation of Section 195(3); and (c) failure to furnish wage notices in violation of Section 195(1). (*See* Ex. 13.)

82. Each of those three statutory requirements falls within Article 6 of the New York Labor Law, and each was within the scope of the engagement Defendants accepted and the New York conversion Defendants performed. Indeed, the wage-notice requirement underlying the third cause of action is the very requirement addressed by the "Wage Theft Prevention Act" section Defendants drafted.

83. The Johnson complaint alleged that more than a quarter of the named plaintiff's work consisted of manual labor, that Plaintiff paid him every two weeks and consistently distributed his wages more than one week after the final day of the associated pay period, and that between three hundred (300) and four hundred (400) other employees performed manual work at the Waverly Facility. (*See* Ex. 13.)



Case ID: 251103259

84. On December 16, 2024, Plaintiff moved to dismiss or, in the alternative, to stay the Johnson Action, contending that the New York Labor Law affords no private right of action for frequency-of-pay violations under *Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D.3d 712 (2d Dep't 2024), and that the named plaintiff lacked Article III standing on the wage-statement and wage-notice counts.

85. On September 25, 2025, the Honorable Anthony J. Brindisi denied Plaintiff's motion in its entirety in a twenty (20) page Decision and Order, predicting that the New York Court of Appeals would recognize a private right of action under Section 191 and adopting *Vega*, and declining to stay the action.

86. Plaintiff thereafter substituted Gordon Rees Scully Mansukhani, LLP ("Gordon Rees") for Windels Marx as its defense counsel in the Johnson Action.

87. The parties negotiated a class settlement providing for a Gross Settlement Amount of Thirty-Six Thousand Dollars and Zero Cents ($36,000.00), inclusive of class counsel's fees and costs, any court-approved service award to the named plaintiff, and the settlement claims administrator's fees and costs. A true and correct copy of the class settlement agreement is attached hereto as Exhibit 14, and a true and correct copy of the executed signature page is attached hereto as Exhibit 14A.

88. The Johnson settlement was preliminarily approved on May 28, 2026, and the Court conducted a fairness hearing on September 30, 2026.

89. By Order entered October 2, 2026, the Honorable Anthony J. Brindisi granted final approval of the class settlement, finding it fair, reasonable, adequate, and in the best interests of the class, and granting final certification to a settlement class consisting of all nonexempt manual laborers employed by Plaintiff in the State of New York at any point between March 1, 2018 and

the date of preliminary approval. A true and correct copy of the Order granting final approval is attached hereto as Exhibit 17.

90. The final approval Order approved a maximum gross settlement fund of Thirty-Six Thousand Dollars ($36,000.00), from which the Court awarded class counsel Twelve Thousand Dollars ($12,000.00) in attorneys' fees and Seven Hundred Fifteen Dollars ($715.00) in costs, a service award of Three Thousand Dollars ($3,000.00) to the named plaintiff, and an estimated Five Thousand Nine Hundred Seventy Dollars ($5,970.00) in administration fees to Analytics Consulting, LLC, leaving an estimated Net Settlement Amount of Fourteen Thousand Three Hundred Fifteen Dollars ($14,315.00). (*See* Ex. 17.)

91. Of the two hundred ninety-three (293) class members to whom notice was mailed, none opted out and none objected, and twenty-one (21) submitted claim forms and will be paid. (*See* Ex. 17.)

92. The final approval Order directed Plaintiff to fund Twenty Thousand Six Hundred Eighty-Nine Dollars and Thirty-Two Cents ($20,689.32) on or before November 2, 2026. (*See* Ex. 17.)

93. The release approved by the Court extends to claims for frequency of pay for manual laborers under Section 191(1)(a) of the New York Labor Law, failure to provide a wage notice under Section 195(1), and failure to provide a proper wage statement under Section 195(3) — that is, to each of the three statutory requirements within the scope of the engagement Defendants accepted and the New York conversion Defendants performed. (*See* Ex. 17.)

94. Judgment was entered on October 2, 2026, dismissing the Johnson Action with prejudice as to all defendants, with the Court retaining exclusive jurisdiction to enforce the settlement. A true and correct copy of the Judgment is attached hereto as Exhibit 18.

### N. The Horton Claim

95. By demand letter dated November 25, 2024, a second former employee, Ondrea Horton, asserted claims against Plaintiff for, among other things, failure to pay timely wages under Section 191 of the New York Labor Law, together with claims of pregnancy discrimination under the Pregnancy Discrimination Act and the New York State Human Rights Law.

96. Plaintiff resolved the Horton claims by executed Confidential Settlement Agreement and Release dated December 24, 2025, pursuant to which Plaintiff paid a sum comprising a payment to Horton and a payment to her counsel for attorneys' fees and costs, without allocation among the claims resolved. The amount of that settlement is confidential under the terms of the Confidential Settlement Agreement and Release and is therefore not stated herein. Plaintiff will disclose that amount subject to an appropriate confidentiality order.

### O. Causation and Damages

97. Had Defendants performed the engagement they accepted with the ordinary skill, knowledge, and care required of an attorney rendering such services, Defendants would have identified Section 191(1)(a) of the New York Labor Law, would have advised Plaintiff that its manual workers were required to be paid weekly, and would have drafted the handbook to so provide.

98. Had Defendants so advised, Plaintiff would have paid its manual workers weekly, and would not have been exposed to the Richtmyer demand, the Johnson Action, the Horton claim, or the Business Corporation Law § 630 Notice of Claim.

99. Plaintiff has suffered actual, ascertainable damages as a direct and proximate result of Defendants' conduct, including, but not limited to, the following:



Case ID: 251103259

a. Defense fees and costs invoiced by Windels Marx in connection with the Richtmyer, Johnson, and Horton matters, in an amount not less than Forty-One Thousand Six Hundred Forty-Two Dollars and Sixty-Six Cents ($41,642.66), together with such additional amounts previously paid to Windels Marx, and such further fees and costs as have been incurred since the date of those invoices, as discovery may establish (*see* Ex. 15);

b. Defense fees and costs invoiced by Gordon Rees in connection with the Johnson Action and payable by Plaintiff within its policy deductible, in an amount not less than Nine Thousand Eight Hundred Fifty-Two Dollars and Three Cents ($9,852.03), together with such further fees and costs as have been incurred since the date of those invoices, as discovery may establish (*see* Ex. 16);

c. The sum of not less than Twenty Thousand Six Hundred Eighty-Nine Dollars and Thirty-Two Cents ($20,689.32) that Plaintiff has been ordered to fund in resolution of the Johnson Action, out of a maximum gross settlement fund of Thirty-Six Thousand Dollars and Zero Cents ($36,000.00) (*see* Exs. 14, 17);

d. The sum paid in resolution of the Horton claim, the amount of which is confidential under the terms of the parties' settlement agreement and which will be disclosed subject to an appropriate confidentiality order;

e. The fees Plaintiff paid to Defendants for the handbook engagement and the related New York employment advice, which fees are subject to disgorgement and forfeiture;



Case ID: 251103259

f. Internal remediation and administration costs, including the cost of converting Plaintiff's payroll practices and of compiling class member workweek and late-payroll data for the settlement administrator; and

g. Such further fees, costs, settlement payments, and consequential damages as have been and may be incurred, to be established at trial.

100. The invoices attached hereto reflect fees and costs billed through their respective dates only. Plaintiff has continued to incur attorneys' fees and costs in the defense and administration of the Johnson Action through final approval and the entry of judgment on October 2, 2026, and continues to incur such fees and costs, in amounts not reflected in those invoices and to be established at trial.

101. As of the filing of this Amended Complaint, Plaintiff's quantified damages exceed Seventy-Two Thousand One Hundred Eighty-Three Dollars and Ninety-Nine Cents ($72,183.99), exclusive of the attorneys' fees and costs incurred since the dates of the foregoing invoices, the confidential sum paid in resolution of the Horton claim, the fees paid to Defendants, Plaintiff's internal remediation costs, interest, and such additional amounts as continue to accrue.

102. Plaintiff would not have incurred any of the foregoing attorneys' fees, costs, or settlement payments had Defendants performed the engagement they accepted in conformity with the applicable standard of care.

### P. Timeliness of This Action

103. Plaintiff did not know, and in the exercise of reasonable diligence could not have known, of Defendants' negligence, breaches, and misrepresentations until July 31, 2024, at the earliest, when the Richtmyer demand first identified the frequency-of-pay violation.



Case ID: 251103259

104. Nothing in Defendants' work product or correspondence disclosed the defect. To the contrary, Defendants affirmatively represented that the handbook had been drafted "with NY law in mind" and that compliance with it would constitute compliance with New York law.

105. Plaintiff was entitled to rely upon the advice of the counsel it retained for the express purpose of ascertaining the requirements of New York law, and was under no duty to independently audit that advice.

106. Defendants' representation of Plaintiff with respect to the handbook, and with respect to New York wage-payment compliance for the Waverly Facility workforce, was continuous from November 30, 2022 through at least August 2, 2024, and Defendants at no time during that period disclosed their error or terminated the representation.

107. This action was commenced within two (2) years of the date upon which Plaintiff first knew or reasonably could have known of Defendants' negligence, and within four (4) years of Defendants' breaches of the contract for legal services, and is therefore timely.

## III. COUNTS OF ACTION

### <u>COUNT I</u>
### Professional Negligence / Legal Malpractice
*Plaintiff v. Defendants*

108. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

109. At all material times, by virtue of the attorney-client relationship between Plaintiff and Defendants, Attorney Kelly and Norris McLaughlin owed Plaintiff a duty to exercise the ordinary skill, knowledge, and care normally exercised by members in good standing of the legal profession.

110. Defendants held themselves out as possessing the skill and knowledge necessary to advise Plaintiff concerning the requirements of New York employment law, and accepted an



Case ID: 251103259

engagement the express object of which was to conform Plaintiff's employee handbook to the law of the State of New York and to identify problematic issues arising under that law.

111. Defendants breached the duty of care owed to Plaintiff, including, but not limited to, in the following respects:

a. Failing to ascertain the composition of Plaintiff's New York workforce, and in particular that Plaintiff employed several hundred individuals at the Waverly Facility who were "manual workers" within the meaning of Section 190(4) of the New York Labor Law;

b. Failing to research, ascertain, and apply the wage-payment requirements of Article 6 of the New York Labor Law, and in particular the weekly-payment requirement imposed by Section 191(1)(a) upon employers of manual workers;

c. Failing to heed Norris McLaughlin's own drafting instruction — set forth in the very template from which the Best Bev handbook was derived — that state law be checked for any requirements related to frequency of pay;

d. Failing to revise the handbook's pay-frequency provision, which on its face applied to "all employees," so as to provide for the weekly payment of manual workers as New York law requires;

e. Drafting and inserting a "Wage Theft Prevention Act" section addressing the New York wage-notice requirement of Section 195(1) in the paragraph immediately following the pay-frequency provision, while failing to identify the pay-frequency requirement imposed by Section 191(1)(a) of the same statutory Article;

f. Affirmatively advising Plaintiff that Defendants had "drafted the employment handbook for your NY entity with NY law in mind," and that compliance with the



Case ID: 251103259

handbook would constitute compliance with applicable law, when the handbook did not comply with New York law;

g. Failing to identify, among the examples of New York's "extra protections" and "additional and heightened requirements" set forth in Defendants' January 25, 2023 communication, the frequency-of-pay requirement applicable to manual workers;

h. Failing to advise Plaintiff of the existence of Section 191(1)(a), of the New York Department of Labor's published "Frequency of Pay" guidance, and of the private right of action and liquidated-damages exposure recognized in *Vega v. CM & Associates Construction Management, LLC*, 175 A.D.3d 1144 (1st Dep't 2019);

i. Failing to identify the pay-frequency defect at any point during Defendants' continuing representation, including during the April 2023 revisions to the same handbook and the New York employment advice rendered thereafter;

j. Failing to advise Plaintiff that it was required to implement, obtain, and retain the wage notices and wage statements described in the very section of the handbook Defendants drafted;

k. Failing to advise Plaintiff to retain counsel licensed and competent to practice in the State of New York to review the handbook and Plaintiff's New York wage-payment practices;

l. Undertaking to render legal services that Defendants were not competent to render; and

m. Such other conduct falling below the applicable standard of care as may be discovered during the course of discovery.

112. Defendants failed to exercise the ordinary skill, knowledge, and care normally exercised by members in good standing of the legal profession with regard to the foregoing.

113. But for Defendants' negligence, Plaintiff would have paid its manual workers weekly, would not have violated Section 191(1)(a) of the New York Labor Law, and would not have incurred the defense costs, settlement payments, and other damages described herein.

114. As a direct and proximate result of Defendants' negligent acts and omissions falling below the applicable standard of care, Plaintiff has suffered the damages set forth above.

**WHEREFORE**, Plaintiff, Best Bev, LLC, by and through its undersigned counsel, hereby demands judgment in its favor and against Defendants, Attorney Kelly and Norris McLaughlin, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000), including compensatory and consequential damages, plus all applicable interest, costs, and any other and further relief that this Honorable Court deems necessary and just, including disgorgement of underlying fees.

## COUNT II
**Breach of Contract**
*Plaintiff v. Defendants*

115. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

116. At all material times, Plaintiff and Defendants were parties to a contract for legal services, formed no later than November 30, 2022, when Attorney Drangula transmitted the November 2022 Draft with a defined request for services and Attorney Kelly accepted that engagement the same day.

117. It is believed and therefore averred that documentation of the contract for legal services, including any engagement letter and Defendants' billing records, is within the possession, custody, and control of Defendants.



Case ID: 251103259

118. As a matter of law within the Commonwealth of Pennsylvania, "an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." *Bailey v. Tucker*, 621 A.2d 108, 115 (Pa. 1993). *See also Coleman v. Duane Morris LLP*, 58 A.3d 833 (Pa. Super. 2012). That implied term is the material provision of the subject contract for purposes of Plaintiff's claim for breach of contract.

119. Defendants further expressly agreed to the specific undertakings requested of them: to review the draft handbook, to update its Pennsylvania-law sections with their New York counterparts, and to identify any problematic issues arising under New York employment law.

120. As described in greater detail *supra*, Defendants breached both the express terms of the engagement and the implied contractual provision requiring the rendition of professional services consistent with those expected of the profession at large.

121. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered the damages set forth above.

**WHEREFORE**, Plaintiff, Best Bev, LLC, by and through its undersigned counsel, hereby demands judgment in its favor and against Defendants, Attorney Kelly and Norris McLaughlin, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000), including compensatory and consequential damages, plus all applicable interest, costs, and any other and further relief that this Honorable Court deems necessary and just, including disgorgement of underlying fees.

## COUNT III
**Breach of Fiduciary Duty**
*Plaintiff v. Defendants*

122. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.



Case ID: 251103259

123. At all material times, by virtue of the attorney-client relationship between Plaintiff and Defendants, Attorney Kelly and Norris McLaughlin owed Plaintiff fiduciary duties, including duties of loyalty, candor, full disclosure, and the avoidance of undisclosed conflicts of interest.

124. Those fiduciary duties were separate from, and additional to, Defendants' duty to exercise reasonable professional skill and care.

125. Defendants breached their fiduciary duties to Plaintiff, including, but not limited to, in the following respects:

a. Failing to disclose to Plaintiff, upon being presented with the Richtmyer demand, that the "significant miss" identified therein was the direct product of Defendants' own advice and work product;

b. Continuing to represent Plaintiff in responding to the Richtmyer demand while laboring under an undisclosed conflict between Defendants' own interest in avoiding exposure for their prior advice and Plaintiff's interest in a candid and complete assessment of that advice;

c. Failing to advise Plaintiff that it may possess a claim against Defendants arising from the handbook engagement;

d. Failing to advise Plaintiff to consult independent counsel concerning Defendants' conflict of interest;

e. Failing to obtain Plaintiff's informed consent to Defendants' continued representation notwithstanding that conflict;

f. Failing to place their professional liability carrier on notice of the claim until directed to do so by Plaintiff's successor counsel; and



Case ID: 251103259

g. Charging and collecting fees from Plaintiff for services that were not competently rendered and that failed of their essential purpose.

126. As a direct and proximate result of Defendants' breaches of the fiduciary duties owed to Plaintiff, Plaintiff has suffered the damages set forth above, and Defendants are not entitled to retain the fees paid to them in connection with the handbook engagement and the related New York employment advice.

**WHEREFORE**, Plaintiff, Best Bev, LLC, by and through its undersigned counsel, hereby demands judgment in its favor and against Defendants, Attorney Kelly and Norris McLaughlin, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000), including compensatory and consequential damages, plus all applicable interest, costs, and any other and further relief that this Honorable Court deems necessary and just, including disgorgement of underlying fees.

## COUNT IV
**Negligent Misrepresentation**
*Plaintiff v. Defendants*

127. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

128. Defendants were in the business of supplying information for the guidance of others in their business transactions, and supplied such information to Plaintiff in the course of their professional engagement. *See Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005); *Bortz v. Noon*, 729 A.2d 555 (Pa. 1999).

129. Defendants made material misrepresentations of fact to Plaintiff, including, but not limited to, the representations that Defendants had "drafted the employment handbook for your NY entity with NY law in mind"; that "if you were to comply with NY law you would be in compliance with PA law"; and that the New York requirements identified in Defendants'



Case ID: 251103259

January 25, 2023 communication represented the "additional and heightened requirements" that New York law imposed upon Plaintiff as an employer.

130. Those representations were false when made, because the handbook Defendants drafted directed the biweekly payment of all employees in direct contravention of Section 191(1)(a) of the New York Labor Law.

131. Defendants made those representations under circumstances in which they knew or ought to have known of their falsity, having undertaken to perform the very analysis that would have revealed it.

132. Defendants made those representations with the intent that Plaintiff rely upon them in adopting and implementing the handbook and in structuring its payroll practices for the Waverly Facility workforce.

133. Plaintiff justifiably relied upon Defendants' representations, adopted the handbook Defendants drafted, and paid its Waverly Facility workforce biweekly in conformity therewith.

134. As a direct and proximate result of Plaintiff's justifiable reliance upon Defendants' misrepresentations, Plaintiff has suffered the damages set forth above.

**WHEREFORE**, Plaintiff, Best Bev, LLC, by and through its undersigned counsel, hereby demands judgment in its favor and against Defendants, Attorney Kelly and Norris McLaughlin, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000), including compensatory and consequential damages, plus all applicable interest, costs, and any other and further relief that this Honorable Court deems necessary and just, including disgorgement of underlying fees.

**COUNT V**
**Vicarious Liability / Respondeat Superior**
*Plaintiff v. Norris McLaughlin*



Case ID: 251103259

135. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

136. At all material times, Attorney Kelly and Attorney Collins were partners, shareholders, members, associates, employees, servants, and/or agents of Norris McLaughlin.

137. At all material times, Attorney Kelly and Attorney Collins acted within the course and scope of their employment by, and/or agency for, Norris McLaughlin, and in furtherance of Norris McLaughlin's business, in rendering the legal services described herein.

138. Norris McLaughlin accepted, performed, and billed for the engagement described herein, and the work product at issue was generated on Norris McLaughlin letterhead and transmitted from Norris McLaughlin electronic mail accounts.

139. Norris McLaughlin is therefore vicariously liable for each of the acts and omissions of Attorney Kelly and Attorney Collins described herein, and for all damages flowing therefrom.

140. As a direct and proximate result of the foregoing, Plaintiff has suffered the damages set forth above.

**WHEREFORE**, Plaintiff, Best Bev, LLC, by and through its undersigned counsel, hereby demands judgment in its favor and against Defendant, Norris McLaughlin, in an amount in excess of fifty thousand dollars ($50,000), including compensatory and consequential damages, plus all applicable interest, costs, and any other and further relief that this Honorable Court deems necessary and just, including disgorgement of underlying fees.

Respectfully Submitted,

**WEISBERG LAW**

*/s/ L. Anthony DiJiacomo, III*
Matthew B. Weisberg, Esquire
Gary Schafkopf, Esquire
L. Anthony DiJiacomo, III, Esquire
*Attorneys for Plaintiff*

**WEISBERG LAW**

Matthew B. Weisberg
Attorney Id. No.: 85570
L. Anthony DiJiacomo, III
Attorney Id. No.: 321356
7 South Morton Ave.
Morton, PA 19070
610-690-0801
Fax: 610-690-0880 *Attorneys for Plaintiff*

| | | |
|---|---|---|
| **BEST BEV, LLC** | : | PHILADELPHIA COUNTY |
| | : | COURT OF COMMON PLEAS |
| v. | : | MAJOR JURY |
| | : | |
| **JOHN V. KELLY, III, ESQ.**, *et al.* | : | No.: 251103259 |

## VERIFICATION

I, Cathy Gratowski, am the Human Resources Director of Plaintiff, Best Bev, LLC, and am authorized to make this Verification on its behalf. I hereby verify that the averments of fact set forth in the foregoing Amended Civil Action Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

*/s/ Cathy Gratowski* — *October 26, 2026*

Signature — Date
On behalf of Plaintiff, Best Bev, LLC

**WEISBERG LAW**
Matthew B. Weisberg
Attorney Id. No.: 85570
L. Anthony DiJiacomo, III
Attorney Id. No.: 321356
7 South Morton Ave.
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
*Attorneys for Plaintiff*

| | | |
|---|---|---|
| **BEST BEV, LLC** | : | PHILADELPHIA COUNTY |
| | : | COURT OF COMMON PLEAS |
| v. | : | MAJOR JURY |
| | : | |
| **JOHN V. KELLY, III, ESQ.**, *et al.* | : | No.: 251103259 |

## CERTIFICATE OF SERVICE

I, L. Anthony DiJiacomo, III, Esquire, hereby certify that on this 26th day of October 2026, a true and correct copy of Plaintiff's foregoing Amended Civil Action Complaint was served via ECF upon all counsel of record.

**WEISBERG LAW**

*/s/ L. Anthony DiJiacomo, III*
Matthew B. Weisberg, Esquire
Gary Schafkopf, Esquire
L. Anthony DiJiacomo, III, Esquire
*Attorneys for Plaintiff*

# INDEX OF EXHIBITS

BEST BEV, LLC v. JOHN V. KELLY, III, ESQ., et al.
Court of Common Pleas of Philadelphia County — No. 251103259

Filed and Attested by the
Office of Judicial Records
26 OCT 2026 06:33 pm
S. GILLIAM


| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| **1** | Electronic mail from Carey Drangula, Esquire, to John V. Kelly, III, Esquire, transmitting the draft handbook and defining the New York engagement, dated November 30, 2022 | 3 |
| **1A** | DRAFT Employee Handbook - Best Bev, LLC, as transmitted to Attorney Kelly on November 30, 2022 | 5 |
| **2** | Electronic mail from Attorney Kelly stating that Best Bev is “required to comply with the law of every state in which you have employees,” dated December 13, 2022 | 52 |
| **3** | Electronic mail from Attorney Kelly transmitting his New York redline of the handbook, dated December 16, 2022 | 58 |
| **3A** | Attorney Kelly’s redline of the Best Bev handbook as transmitted December 16, 2022, with document metadata identifying John V. Kelly, Esq. as the last person to modify the file | 60 |
| **4** | Electronic mail from Attorney Kelly stating that he “drafted the employment handbook for your NY entity with NY law in mind,” dated January 10, 2023 | 124 |
| **5** | Electronic mail from Attorney Kelly transmitting the completed New York conversion and summarizing New York’s “extra protections” for workers, dated January 25, 2023 | 127 |
| **6** | Best Bev, LLC Employee Handbook as adopted in October 2023 | 129 |
| **7A** | Best Bev, LLC Employee Handbook, revision dated February 14, 2024 | 187 |
| **7B** | Best Bev, LLC Employee Handbook, revision dated April 5, 2024 | 246 |
| **7C** | Best Bev, LLC Employee Handbook, revision dated June 12, 2024 | 305 |
| **7D** | Best Bev, LLC Employee Handbook, revision dated June 13, 2024 | 364 |
| **7E** | Best Bev, LLC Employee Handbook, revision dated June 19, 2024 | 423 |
| **8** | Demand letter and notice of intent to sue served on behalf of Jamie Richtmyer by Borrelli & Associates, P.L.L.C., with attachments, dated July 31, 2024 | 482 |
| **9** | Electronic mail thread between Attorney Drangula and Attorney Kelly concerning the Richtmyer demand, including the “significant miss” message, dated August 1-2, 2024 | 491 |
| **10** | Best Bev, LLC Employee Handbook, revision dated July 29, 2024, from which the biweekly pay-frequency sentence was removed | 503 |
| **11** | Notice of Claim pursuant to Section 630 of the New York Business Corporation Law seeking to enforce the personal liability of Best Bev’s ten largest shareholders | 562 |
| **12** | Letter from Rodman E. Honecker, Esquire, of Windels Marx to Attorney Kelly directing that Defendants place their malpractice carrier on notice, dated September 10, 2024 | 566 |
| **13** | Class action complaint filed in Johnson v. Best Bev LLC, No. 3:24-cv-1260 (N.D.N.Y.), dated October 15, 2024 | 568 |
| **14** | Class settlement agreement in the Johnson action providing for a Gross Settlement Amount of $36,000.00 | 585 |
| **14A** | Executed signature page to the Johnson class settlement agreement | 606 |

# INDEX OF EXHIBITS

BEST BEV, LLC v. JOHN V. KELLY, III, ESQ., et al.
Court of Common Pleas of Philadelphia County — No. 251103259


| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| **15** | Windels Marx Lane & Mittendorf, LLP Summary of Open Invoices dated September 26, 2025, together with the underlying invoices for the Richtmyer, Johnson, and Horton matters | 608 |
| **16** | Gordon Rees Scully Mansukhani, LLP invoices for the defense of the Johnson action | 698 |
| **17** | Order granting final approval of the class action settlement, service award, and award of attorneys' fees and expenses in the Johnson action, entered October 2, 2026 | 709 |
| **18** | Judgment in a Civil Case entered in the Johnson action on October 2, 2026, dismissing the action with prejudice | 717 |